Filed 6/29/26  Max v. Shih CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| DAVID MAX,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>GEORGE SHIH,<br><br>    Defendant and Respondent;<br><br>RALPH ROGARI,<br><br>    Appellant. | B344402<br><br>(Los Angeles County<br>Super. Ct. No. BC645117) |

APPEAL from orders of the Superior Court of Los Angeles County, William F. Fahey, Judge.  Affirmed.

Rogari Law Firm and Ralph Rogari for Plaintiff and Appellant David Max.

Ralph Rogari, in pro. per., for Appellant Ralph Rogari.

Newmeyer & Dillion, Benjamin P. Pugh and Michelle D. Brunson for Defendant and Respondent George Shih.

Appellants David Max and Ralph Rogari appeal from postjudgment orders awarding judgment debtor discovery sanctions to respondent George Shih. We affirm.

## BACKGROUND

In 2016, Max sued several directors and shareholders of 8e6 Corp., including respondent Shih (collectively, defendants). The court granted defendants' motion for summary judgment and, on June 27, 2019, entered judgment in their favor on all claims. The judgment provided "[d]efendants may seek costs pursuant to the California Code of Civil Procedure and the California Rules of Court." Max appealed the 2019 judgment. (*Max v. Shih* (Nov. 30, 2020, B301010) [nonpub. opn.].)

While the appeal from the 2019 judgment was pending, defendants timely filed a joint prevailing party cost memorandum, seeking $13,333.83 in prejudgment costs. (See Code Civ. Proc., § 1032, subd. (b) [generally "entitl[ing]" a "prevailing party . . . as a matter of right to recover costs in any action or proceeding"]; see also § 1033.5 [describing types of costs recoverable].)[1] Max filed a motion to tax, but the court concluded Max's motion was "inadequate," and took the motion off calendar. Max did not object to the court's order, never attempted to modify or renew the motion, nor ask that it be put back on calendar.

We affirmed the 2019 judgment and awarded defendants their costs on appeal. After a remittitur issued, defendants filed with the trial court a memorandum seeking $452.20 in appellate costs. The court took no action in response to the cost memorandum. Nor did Max. On June 1, 2022, the court issued a final amended judgment awarding defendants all requested costs,

---

[1] All subsequent statutory references are to the Code of Civil Procedure.

totaling $13,788.03 ($13,333.83 in prejudgment prevailing party costs plus $452.20 in costs on appeal). (*Max. v. Shih* (July 27, 2023, B322716) [nonpub. opn.].)

Max appealed the amended judgment in appeal no. B322716 and, on July 27, 2023, this court affirmed.

As of May 2024—almost a year after we affirmed the amended cost judgment—defendants had received no payment. Therefore, on May 21, 2024, Shih served judgment debtor discovery on Max pursuant to sections 708.010 and 708.020. On June 24, 2024, Max served boilerplate objections but produced no documents.

On July 16, 2024, Max paid defendants $16,646.37, characterizing it as payment in full on the cost judgment with all interest due. In calculating this amount, Max used June 1, 2022—the date the court amended the judgment to include the specific amount of costs—as the date postjudgment interest began accruing on prevailing party prejudgment costs.

In a July 24, 2024 letter, defendants informed Max that defendants did not view this payment as fully satisfying the amount owed with interest, explaining their view that interest began accruing on the prejudgment costs as of the date of the original judgment, June 27, 2019. The letter also addressed Max's objections to the judgment debtor discovery requests and his failure to produce anything. Max did not respond.

On August 12, 2024, Shih filed two motions to compel substantive responses to the judgment debtor discovery. The motions also sought attorney fees as discovery sanctions from both Max and Rogari.

At the initial October 29, 2024 hearing on these motions, the court "gave a tentative that the motions were well taken and would be granted, but invited the parties to meet and confer and to see if the case could be resolved." Specifically, the court informed

the parties it was "tentatively and strongly inclined" to agree interest on the costs judgment began accruing on the date of the original judgment, and thus that the judgment "ha[d] not been fully satisfied." The court further informed the parties that, absent party agreement resolving the case, it would grant the motions to compel and award attorney fees as sanctions. The court took the matter under submission and "[gave] the parties . . . a week to negotiate" the specific amount of "[Shih's counsel's] attorney's fees for one motion,[2] approximately $9,900, plus the interest due and payable of about [$4,000]" for a total of "roughly $14,000."

On November 4, 2024, Rogari "paid [Shih's counsel] the remainder of the judgment amount in cash, but . . . did not discuss [with counsel] the sanctions amount for bringing . . . [the] motions." At the continued hearing on November 6, 2024, Shih's counsel acknowledged that this payment satisfied the judgment, but confirmed Shih was still seeking attorney fees as sanctions, per the court's tentative ruling.

The court granted the discovery motions "with respect to the request for attorney's fees only." In two orders, it awarded Shih a total of $9,087.50 in sanctions against appellants, jointly and severally. Appellants timely appealed the orders, which we review here.

---

[2] The motions to compel requested attorney fees in approximately this amount for each motion to compel. During the October 29, 2024 hearing, however, the court stated it was not inclined to grant this request in full. Shih's counsel stated he was open to accepting the requested fees for only one of the two motions if doing so would end the dispute.

# DISCUSSION

## A.    Postjudgment Interest on Cost Judgment

Appellants argue Max fully satisfied the judgment when he made his initial July 16, 2024 payment.  They contend the court concluded otherwise, because it used the incorrect interest accrual date.[3]  They argue postjudgment interest could not and did not start accruing on prejudgment costs until June 1, 2022, the date the court set the specific amount of those costs and amended the judgment to include that amount.  According to appellants, the costs judgment could not constitute a "money judgment" on which interest may accrue (§ 685.020, subd. (a)) until it included a specific dollar amount.

Case law does not support—and indeed *Felczer v. Apple Inc.* (2021) 63 Cal.App.5th 406 (*Felczer*) expressly rejects—appellants' argument.  We agree with *Felczer*'s well-reasoned and thorough analysis.  As explained in *Felczer*, a judgment creating a prevailing party's right to collect prejudgment costs—even if it does not identify the specific dollar amount—constitutes a "money judgment." (*Id.* at p. 415.)  The code requires "interest commence[ ] to accrue on a money judgment on the date of entry of the judgment." (§ 685.020, subd. (a).)  Thus, "in a civil case where the prevailing party is entitled to recover certain litigation expenses and attorney's fees from the losing party, . . . postjudgment interest on an award of prejudgment costs begin[s] to run . . . on the date

---

[3] Appellants' briefing does not clearly identify how this issue is relevant to their appeal from the sanction orders.  From the nature of their arguments, appellants appear to be arguing that, had the court correctly viewed Max's initial July 16, 2024 payment as fully satisfying the judgment and ending the judgment debtor discovery dispute, the court would not have awarded sanctions for failure to comply with discovery requests over three months later.

of the judgment or order that establishes the right of a party to recover a particular cost item, even if the dollar amount has yet to be ascertained." (*Felczer, supra,* at pp. 409–410.) This approach is consistent with federal law applying similar statutes. (See *id.* at pp. 416–417.) It is also in line with one of the policies behind awarding postjudgment interest—" 'compensat[ing] the judgment creditor for the loss of use of the money until the judgment is paid' "—because "[p]revailing parties lose use of 'their' funds as soon as their entitlement to those funds is established," which occurs when a judgment in their favor is entered. (*Id.* at p. 418.)

We disagree with appellants that *Felczer* renders meaningless the following language in section 685.090, subdivision (a): "Costs are added to and become a part of the judgment . . . [¶] . . . [u]pon the filing of an order allowing the costs pursuant to this chapter . . . [or] . . . [¶] . . . [i]f a memorandum of costs is filed . . . and no motion to tax is made, upon the expiration of the time for making the motion." (§ 685.090, subd. (a)(1)–(2).) We interpret this as establishing the point when the specific dollar *amount* of costs automatically becomes part of the underlying cost judgment, and confirming that additional requests for relief are not necessary for this to happen. This interpretation is consistent with California Rules of Court, rule 3.1700(b)(4), "which provides that once allowable costs have been determined, ' "the clerk must immediately enter the costs on the judgment." ' " (*Felczer, supra,* 63 Cal.App.5th at p. 412, quoting *Chodos v. Borman* (2015) 239 Cal.App.4th 707, 714.)[4] *Felczer* is not inconsistent

_____

[4] Accordingly, in affirming the amended cost judgment in 2023, we characterized it as "neither adjudicat[ing] the cost issue, nor chang[ing] the parties' rights and obligations[, but] [r]ather . . . correct[ing] the clerk's and court's failures to include in

with section 685.090, subdivision (a)(1), interpreted in the manner we propose.

Appellants next argue *Felczer's* holding is inconsistent with California Supreme Court authority. Specifically, appellants cite *Stockton Theatres, Inc. v. Palermo* (1961) 55 Cal.2d 439 for the proposition that "[a] judgment for costs should be governed by the law applicable to judgments generally. Such awards are, in fact, separate and complete judgments in themselves." (*Id.* at p. 443.) But appellants do not explain how this concept is inconsistent with the analysis in and holding of *Felczer*; indeed, *Felczer* cites *Stockton* for this very proposition (*Felczer, supra*, 63 Cal.App.5th at p. 415), and *Stockton* is consistent with our decision, not appellants' position.

Consistent with *Felczer*, and as the trial court correctly concluded, "when judgment was entered [on June 27, 2019], it established [defendants'] right to certain costs as the prevailing parties in the action. (See § 1033.5, subd. (a).) That judgment was therefore a money judgment for these costs because it required [Max] to pay them, even if the exact amount remained to be determined. Interest on those amounts began to accrue immediately upon entry of the judgment," pursuant to section 685.020. (*Felczer, supra*, 63 Cal.App.5th at p. 415.)

## B. The Sanctions Award

Appellants next argue the sanctions awarded were "legally unauthorized." (Boldface omitted.) Because Max had satisfied the judgment, at the latest, on November 4, 2026, they contend, the

---

the judgment costs to which [defendants], under California Rules of Court, rule 3.1700(b)(4), had a right by operation of law 'as an incident of the judgment given upon the issues in the action the moment of its rendition.' "

7

court lacked authority to issue any orders in connection with judgment debtor discovery after that date.  We disagree.

The code authorizes specific forms of postjudgment discovery, including interrogatories and document production demands, seeking "information to aid in enforcement of [a] money judgment." (§§ 708.020, subd. (a) & 708.030, subd. (a); see §§ 708.010–708.030.) Such judgment debtor discovery requests "may be enforced, to the extent practicable, in the same manner as . . . in a civil action." (§ 708.020, subd. (c) [interrogatories]; § 708.030, subd. (c) [document inspection and production].)

The Civil Discovery Act (§§ 2016.010–2036.050) (the Act) governs the general enforcement of discovery requests in a civil action.  Sanctions for "misuse of the discovery process" are a key tool to such enforcement.  The Act specifically identifies particular sanctions to be awarded for particular types of misuse of particular discovery methods.  (*City of Los Angeles v. PricewaterhouseCoopers, LLP* (2024) 17 Cal.5th 46, 62.)  In addition, "when another, more specific provision of the . . . Act [does not] set[ ] conditions or limits on a trial court's authority to sanction [the] particular form[ ] of discovery misuse" (*PricewaterhouseCoopers, supra*, at p. 65; see *id.* at pp. 65–74), the Act generally authorizes the court to impose sanctions for discovery misuse.  (See § 2023.030; see also *PricewaterhouseCoopers, supra*, at p. 74 [in sections 2023.010 and 2023.030, "the Legislature gave trial courts a statutory basis for exercising authority to address egregious forms of misconduct not addressed elsewhere in the Act"].)  These sanctions may include, inter alia, "attorney's fees . . . incurred by anyone as a result of [the] [discovery misuse] conduct." (§ 2023.030, subd. (a).)  The "independent authority to impose sanctions" that section 2023.030 confers exists even after the underlying action has concluded. (*PricewaterhouseCoopers, supra*, at p. 69; see *id.* at p. 56 [affirming

award of "monetary sanctions for the [plaintiff's] discovery misconduct" that defendant sought and court awarded only "[a]fter the [plaintiff] voluntarily dismissed its suit"].)

Applying this framework here, the court had authority to "enforce[ ]" Shih's judgment debtor discovery requests as it would such request "in a civil action" (§§ 708.020, subd. (c) & 708.030, subd. (c)—that is, by imposing, in its discretion, monetary sanctions, including attorney fees, for a failure to respond to the requests, even after the underlying dispute has concluded. (See § 2023.010, subd. (d) [generally defining "misuse[ ] of the discovery process" to include "[f]ailing to respond or to submit to an authorized method of discovery"].) Even though the discovery request had become moot at the time the court awarded sanctions, "forcing a party to resort to the court to get discovery [can be] sanctionable behavior." (*Masimo Corp. v. The Vanderpool Law Firm, Inc.* (2024) 101 Cal.App.5th 902, 909, fn. 9.) After Max failed to pay the cost judgment for over a year, defendants were indeed "forc[ed]" to seek the discovery they did, and incur attorney fees in the process.

In arguing to the contrary, appellants contend more specific statutory language regarding judgment debtor discovery in section 708.010, subdivision (a) prevents application of the general section 2023.030 sanction authority here. Namely, section 708.010, subdivision (a) provides that the judgment debtor discovery "procedure[s] in this article may be used at any time a money judgment is enforceable." Appellants interpret this as suggesting the court may only impose sanctions based on misuse of judgment debtor discovery when a judgment has not yet been satisfied and is thus still "enforceable." But section 708.010 and the "article" referenced therein address how a judgment creditor may *make* judgment debtor discovery requests. Thus, it is not a more specific

9

*sanctions* provision limiting a court's general discovery sanction authority under section 2023.030.[5]

Finally, appellants argue that the court lacked authority to impose the sanctions because he did not "unsuccessfully make[ ] or oppose[ ] a motion to compel further response to a demand" (§ 2031.310, subd. (h)), nor did he "unsuccessfully make[ ] or oppose[ ] a motion to compel a further response to interrogatories." (§ 2030.300, subd. (d).) He cites sections 2031.310 and 2030.300, which *require* a court to impose sanctions under such circumstances. But that sanctions are mandatory under circumstances not present here does not mean the court erred in choosing to impose discretionary sanctions under the independent authority section 2023.030 confers. Other authority is also inconsistent with appellants' position. (See Cal. Rules of Court, rule 3.1348(a) ["[t]he court may award sanctions under the Discovery Act in favor of a party who files a motion to compel discovery, even though no opposition to the motion was filed, or opposition to the motion was withdrawn, or the requested discovery was provided to the moving party after the motion was filed"].)

---

[5] The portion of section 708.010, subdivision (a) on which appellants do not rely also supports our interpretation of the section. That section provides in full: "*Except as provided in this section and in subdivision (b) of Section 708.020*, the procedure in this article may be used at any time a money judgment is enforceable." (§ 708.010, subd. (a), italics added.) Section 708.020, in turn, speaks to times when a creditor may not make certain types of discovery requests on a judgment debtor. This is consistent with viewing the limiting language in section 708.010, subdivision (a) as limiting when discovery requests can be made—not when a creditor may seek to "enforce" requests already made.

10

Accordingly, the court did not lack authority to impose sanctions, nor did it abuse its discretion in choosing to do so.

## DISPOSITION

The orders are affirmed.  Respondent shall recover his costs on appeal.

<u>NOT TO BE PUBLISHED</u>.


ROTHSCHILD, P. J.

We concur:


BENDIX, J.


M. KIM, J.

11